**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ZHENGKUN QU and JUAN DAI,

Petitioners,

v.

JAMES JANECHA, et al.,

Respondents.

**CASE NO.** 5:26-CV-05419-CTS

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**

## I. INTRODUCTION

On September 17, 2026, Petitioners Zhengkun Qu and Juan Dai ("Petitioners"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.) The Petition alleges that Petitioners are in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") in Adelanto, California and are being held in violation of the Constitution and laws of the United States. (*See generally id.*) On September 28, 2026, Respondents filed an Answer to the Petition. (Ans., ECF No. 8.) On September 30, 2026, Petitioners filed their Reply. (ECF No. 9.) For the reasons set forth below, the Court GRANTS Count Three of the Petition and ORDERS Respondents to release Petitioners from custody immediately.

## II. BACKGROUND

The allegations of the Petition are as follows: Petitioners, who are husband and wife, are both 57-year-old natives and citizens of the People's Republic of China. (Pet. ¶¶ 12–13.) They fled China because they fear persecution. (*Id.* at ¶ 21.) On March 11, 2026, Petitioners were inspected and lawfully admitted to the United States on valid B-2 nonimmigrant visas with an admit-until date of September 10, 2026. (*Id.* at ¶ 22.) On August 22, 2026, while still within their authorized period of stay, Petitioners timely filed an application for asylum with United States Citizenship and Immigration Services ("USCIS"). (*Id.* at ¶ 23.)

In connection with their pending asylum application, USCIS directed Petitioners to appear for a biometrics appointment, with notices warning that failure to appear might result in the dismissal of the asylum application. (*Id.* at ¶ 26.) Thus, the Petitioners appeared together at the USCIS Application Support Center in Pomona, California on September 16, 2026, so that their biometrics could be taken. (*Id.* at ¶¶ 26–27.) While Petitioners were there, ICE officers arrested them both. (*Id.* at ¶ 28.) No warrant of any kind, judicial or administrative, had been issued for either Petitioner before the arrest, and neither Petitioner was served with a Form I-200 administrative warrant at or before the moment of arrest. (*Id.*) There was no emergency, no exigency, and no risk of flight. (*Id.* at ¶ 31.) Petitioners had applied for asylum, had been directed by the government to report to a specific federal office at a specific time in order to prevent dismissal of that application, and voluntarily presented themselves at that time and place as directed. (*Id.* at ¶¶ 26, 31.)

After their arrest, Petitioners were transferred to the Adelanto ICE Processing Center, where they have been held in custody ever since. (*Id.* at ¶ 30.) Neither Petitioner has been ordered removed from the United States. (*Id.* at ¶ 38.) Neither Petitioner has any criminal history. (*Id.* at ¶ 24.) As of the date the Reply was filed, Petitioners had not received a bond hearing. (Rep. 10.)

The Answer neither disputes these allegations nor provides any additional facts or exhibits. (*See generally* Ans.)

## III. LEGAL STANDARD

Writs of habeas corpus may be granted by the federal courts to noncitizens in the custody of immigration authorities. 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus" extends to individuals "in custody in violation of the Constitution or laws or treaties of the United States."); *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's detention without bond hearing fell within the "core of habeas"). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government therefore may detain individuals outside of the criminal context only "in certain special and 'narrow' nonpunitive 'circumstances.'" *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

///

## IV. DISCUSSION

Petitioners assert, *inter alia*, that their warrantless arrests violated 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8(c)(ii), and an injunction against such arrests issued recently by a judge of this district in *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388 (C.D. Cal. Sept. 2, 2026), Dkt. No. 738—and that therefore they are entitled to immediate release from custody. (Pet. ¶¶ 61–63.) Respondents have failed even to acknowledge that Petitioners have asserted this claim, let alone offer any argument in opposition thereto. (*See generally* Ans.) The Answer simply acknowledges that Petitioners are detained under the authority of 8 U.S.C. § 1226(a), under which they are entitled to a bond hearing.[1] (*Id.* at 2.) Respondents dispute none of Petitioners' facts, offer none of their own to supplement those alleged by Petitioners, do not contend that Petitioners' arrests were effected pursuant to properly issued warrants, do not offer warrants into evidence, do not argue that warrants were unnecessary for any reason, do not contest the allegation that Petitioners' arrests violated the injunction issued by the *Vasquez Perdomo* court two weeks before those arrests, and fail to present any reasoned argument in opposition to Petitioners' claim that their warrantless arrests merit habeas relief.

///

---

[1] In fact, half of the Answer, which is just over one page in length, is devoted to a discussion of the procedural history of *Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), and asserts that "Petitioners appear to be a member of the Bond Eligible Class certified in" that case. (Ans. 2.) This is incorrect. The Bond Eligible Class certified in that case includes only those noncitizens who "have entered or will enter the United States without inspection." *Id.* at 1127. Petitioners, who entered lawfully with inspection, are therefore not members of that class. (Pet. ¶ 1.) Nonetheless, Respondents' assertion that Petitioners' detention is governed by 8 U.S.C. § 1226(a) is correct. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026) (holding that 8 U.S.C. § 1226 governs "inadmissible and deportable aliens present in the interior of the United States").

"In our adversarial system of adjudication, we follow the principle of party presentation," meaning that "in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (internal quotation omitted). Further, "as a general rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* at 375–76 (alteration in original) (internal quotation omitted). Indeed, the Supreme Court recently reminded the lower courts that they are "essentially passive instruments of government" and thus "points not argued will not be considered." *Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 342 (2026) (citations and quotation marks omitted). Thus, Respondents' failure to oppose Petitioners' warrantless arrest claim is grounds for granting it. *See Petrashkevich v. Mullin*, No. 5:26-CV-04223-PD, 2026 WL 2337897, at *2 (C.D. Cal. Aug. 12, 2026) ("Finally, the absence of opposition to Petitioner's 8 U.S.C. § 1357(a)(2) claim itself is a basis to grant the Petition."); *Perdomo Rivera v. Mullin*, No. 5:26-CV-04197-KES, 2026 WL 2276935, at *3 (C.D. Cal. Aug. 6, 2026) ("Petitioner alleges that he was arrested without a warrant and without an individualized assessment of flight risk. Respondents fail to respond to this allegation or provide any evidence that his arrest was lawful. Accordingly, Petitioner is entitled to relief . . . .").

Further, the claim that Petitioners' warrantless arrests violated 8 U.S.C. § 1357(a)(2) and its implementing regulations, and that Petitioners are therefore entitled to habeas relief, has merit. Section 1357(a) sets forth the powers that immigration officers and employees may exercise without a warrant, and subsection (a)(2) provides that:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have

> power without warrant . . . to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . . .

8 U.S.C. § 1357(a)(2). The corresponding regulations are found at 8 C.F.R. § 287.8, which provides "standards for enforcement activities" that "must be adhered to by every immigration officer involved in enforcement activities." 8 C.F.R. § 287.8. Specifically, "[o]nly designated immigration officers are authorized to make an arrest," *id.* at § 287.8(c)(1), and "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained," *id.* at § 287.8(c)(2)(ii).

Thus, as the *Vasquez Perdomo* court recently explained, there are "two prerequisites for a warrantless arrest: The agent must have probable cause that (1) the detainee is in the United States in violation of any law or regulation regulating the admission, exclusion, expulsion, or removal of noncitizens, *and* (2) the detainee 'is likely to escape before a warrant can be obtained for his arrest.'" *Vasquez Perdomo*, 2026 WL 2751388, at *19. This is consistent with the Supreme Court's summary of the statutes and regulations governing immigration enforcement arrests:

> As a general rule, it is not a crime for a removable alien to remain present in the United States. *See INS v. Lopez-Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). . . . When an alien is suspected of being removable, a federal official issues an administrative document called a "Notice to Appear." *See* 8 U.S.C. § 1229(a); 8 CFR § 239.1(a). The form does not authorize an arrest. Instead, it gives the alien information about the proceedings, including the time and date of the removal hearing. *See* 8 U.S.C. § 1229(a)(1). If an alien fails to appear, an *in absentia* order may direct removal. § 1229a(b)(5)(A).

> The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process. For example, the Attorney General can exercise discretion to issue a warrant for an alien's arrest and detention "pending a decision on whether the alien is to be removed from the United States." § 1226(a) . . . And if an alien is ordered removed after a hearing, the Attorney General will issue a warrant. *See* 8 CFR § 241.2(a)(1). In both instances, the warrants are executed by federal officers who have received training in the enforcement of immigration law. *See* §§ 241.2(b), 287.5(e)(3). *If no federal warrant has been issued, those officers have more limited authority*. *See* 8 U.S.C. § 1357(a). They may arrest an alien for being "in the United States in violation of any [immigration] law or regulation," for example, *but only where the alien "is likely to escape before a warrant can be obtained."* § 1357(a)(2).

*Arizona v. United States*, 567 U.S. 387, 407–08 (2012) (emphasis added).

Here, Petitioners have alleged that they were directed by Respondents to appear for a biometrics appointment, which they were required to attend in order to pursue their asylum application, at a day and time chosen by Respondents and at a location operated by Respondents. Notification of the scheduled appointment was provided to Petitioners—by Respondents—weeks in advance. (Pet. ¶¶ 26–27.) Thus, Respondents knew exactly where and when to find Petitioners, and had no excuse for not obtaining a warrant in advance. Petitioners were not encountered unexpectedly somewhere under unforeseen circumstances that Respondents could not have planned for and which might have made it likely that Petitioners would escape before a warrant could be obtained.

Multiple courts have recently granted habeas relief to petitioners who were detained by ICE officials without a warrant where the facts did not indicate that there had been any likelihood of escape. *See, e.g.*, *Mejia v. Warden*, No. ED CV 26-5705-E, 2026 WL 3019449, at *2 (C.D. Cal. Oct. 7, 2026) (granting habeas petition and ordering immediate release after finding that warrantless arrest by ICE

officers violated 8 C.F.R. § 287.8(c)(ii), as "[o]n the present record, there is no evidence of any warrant and no evidence of any 'reason to believe' Petitioner was likely to escape before a warrant could be obtained"); *Pang v. Warden*, No. 3:26-CV-05047-LEK-JLB, 2026 WL 2925852, at *5 (S.D. Cal. Sept. 29, 2026) (granting habeas petition and ordering immediate release after finding that petitioners' detention without a warrant violated 8 U.S.C. § 1357(a)(2)); *Petrashkevich*, 2026 WL 2337897, at *2 (granting habeas petition and ordering immediate release of petitioner who entered lawfully, overstayed visa and applied for asylum, and was then detained at Los Angeles International Airport while traveling domestically, after Respondents failed to oppose petitioner's claim that his arrest was warrantless and no basis existed to show that he was likely to escape). After all, "[i]t should go without saying that federal agencies, including ICE, must follow federal law, including federal regulations." *Mejia*, 2026 WL 3019449, at *2.

Further, the relief granted in these circumstances is release from custody. *Mejia*, 2026 WL 3019449, at *2 ("Respondents suggest that any remedy should be limited to a belated bond hearing before an immigration judge. The suggestion is inapt. A belated bond hearing would not remedy the federal law violations Petitioner unjustifiably has suffered. The most appropriate remedy for these violations is to release Petitioner from detention immediately."); *Pang*, 2026 WL 2925852, at *5 (ordering immediate release despite fact that petitioners had already received bond hearings, as those proceedings "addressed whether Petitioners' continued detention was warranted, not whether Petitioners were lawfully detained in the first instance"); *Petrashkevich*, 2026 WL 2337897, at *2 ("[T]he Court concludes that Petitioner is entitled to relief based on his claim under 8 U.S.C. § 1357(a)(2) and orders release, as other courts in this district have done.").

The Court notes that, in addition to immediate release, Petitioners seek an order enjoining Respondents from re-detaining Petitioners "absent notice and a constitutionally adequate hearing before a neutral adjudicator held prior to any such

re-detention." (Pet. 19.) However, the Petition fails to provide a factual or legal basis for such prospective relief at this time.

IT IS THEREFORE ORDERED THAT:

1. Judgment shall be entered GRANTING the Petition as to Count Three and dismissing the remaining counts without prejudice; and
2. Respondents MUST RELEASE **Petitioners Zhengkun Qu (A 237-016-232)** and **Juan Dai (A 237-016-233)** from custody within 24 hours of entry of this Order under the same conditions that existed prior to their detention.

DATED: October 9, 2026

CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE